**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEJANDRO NUNEZ SANCHEZ and ROSENDO NUNEZ, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>BAVARIAN MANSION, LLC, d/b/a BAVARIAN MANOR COUNTRY INN & RESTAURANT, FIVE FURLONGS TAVERN LLC, d/b/a FIVE FURLONGS TAVERN, and GARRETT DOYLE,<br><br>Defendants. | Case No.: 1:24-CV-0693 (BKS/DJS)<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff ALEJANDRO NUNEZ SANCHEZ and ROSENDO NUNEZ ("Plaintiffs"), on behalf of themselves and others similarly situated, hereby files this Class and Collective Action Complaint against Defendants BAVARIAN MANSION LLC d/b/a BAVARIAN MANOR COUNTY INN & RESTAURANT, FIVE FURLNGS TAVERN LLC d/b/a FIVE FURLONGS TAVERN (the "Corporate Defendants"), and GARRETT DOYLE  (the "Individual Defendant", and collectively with the Corporate Defendants, the "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid wages, including overtime, due to a fixed salary, (3) unpaid wages, including overtime, due to timeshaving, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid wages, including overtime, due to a fixed salary,  (3) unpaid wages, including overtime, due to timeshaving, (4) unpaid spread of hours premiums, (5) frequency of pay violation, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Plaintiffs further allege that pursuant to Internal Revenue Code, 26 U.S.C. § 7434, they and other similarly situated are entitled to statutory damages, fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.      Plaintiffs further allege that Defendants breached their contract with Plaintiffs and others similarly situated by failing to pay employer payroll taxes for Plaintiffs and others similarly situated as required by the Federal Insurance Contribution Act ("FICA"). Plaintiffs also allege that in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiffs and others similarly situated.

5.      Defendants operates a hotel restaurant under the name BAVARIAN MANOR COUNTRY INN & RESTAURANT, which offers food and hospitality services to tourists and interstate travelers.

6. Plaintiffs and others similarly situated are victims of Defendants' scheme to underpay employees. Specifically, Defendants compensated Plaintiffs and Class members a set amount per week despite the fact that the hours Plaintiffs and Class members worked per week would have placed the compensation below the statutory required wage.

7. Defendants failed to compensate Plaintiffs and others similarly situated overtime wages for all relevant weeks where they worked over 40 hours.

8. Defendants failed to compensate Plaintiffs and others similarly situated for their earned spread of hours for workdays lasting ten hours or longer.

9. Defendants failed to compensate Plaintiffs and others similarly situated on time pursuant to state law.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

11. Venue is proper in the Northern District pursuant to 28 U.S.C. § 1391.

## PARTIES

12. Plaintiff ALEJANDRO NUNEZ SANCHEZ ("Plaintiff SANCHEZ") is a resident of New York County, New York.

13. Plaintiff ROSENDO NUNEZ ("Plaintiff NUNEZ") is a resident of New York County, New York.

14. Corporate Defendant BAVARIAN MANSION, LLC ("Bavarian Manor") is a domestic limited liability company duly organized under the laws of the State of New York with a principal place of business located at 866 Mountain Avenue, Purling/Round Top, NY 12470 and

an address for process of service in care of The Limited Liability Company, 500 S. Ohioville Road, New Paltz, NY 12651.

15.    Corporate Defendant FIVE FURLONGS TAVERN LLC ("Furlongs Tavern") is a domestic limited liability company formed under the laws of the State of New York with a principal place of business and address for process of service located at 2478 Route 145, East Durham, NY 12423.

16.    Individual Defendant GARRETT DOYLE is the principal and executive officer of Corporate Defendants, exercises operational control as it relates to all employees including Plaintiffs. GARRETT DOYLE exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs. At all times, GARRETT DOYLE exercised functional control over the business and financial operations of Corporate Defendants. GARRETT DOYLE had the power and authority to supervise and control Plaintiff's employment and could reprimand employees.

17.    Plaintiffs personally observed Individual Defendant GARRETT DOYLE take an active part in the day-to-day management of the business including, but not limited to:

    a.    Plaintiffs' paychecks were generally issued and signed by either Individual Defendant GARRETT DOYLE or Manager Connie [Last Name Unknown] the course of their employment;

    b.    Individual Defendant GARRETT DOYLE worked at the Bavarian Manor at least 3-4 times per week;

c. During the time Individual Defendant GARRETT DOYLE was there, he would hold meetings with managers and instruct employees, like Plaintiffs, on routine and miscellaneous tasks like cleaning and polishing silverware;

d. Individual Defendant GARRETT DOYLE had the exclusive power to determine the wages of Plaintiffs and Class members. Employees who request raises must obtain approval from Individual Defendant GARRETT DOYLE;

e. Individual Defendant GARRETT DOYLE had the power to reprimand and discipline employees up to and including termination.

18. Individual Defendant GARRET DOYLE possess the ability, power, and discretion to unilaterally change Plaintiffs' and Class members' schedule, rate of pay, and employment status.

19. Individual Defendant GARRETT DOYLE may exert similar control to other similarly situated employees.

20. Defendants collectively own and manage two (2) restaurants in New York, at the following locations:

a. Bavarian Manor County Inn & Restaurant – 866 Mountain Avenue, Purling/Round Top, NY 12470; and

b. Five Furlongs Tavern – 2478 Route 145, East Durham, NY 12423

(collectively, the "Restaurants").

21. The Restaurants operate as a single integrated enterprise under the common control and ownership of Defendants. Specifically, the Restaurants engaged in related activities, common ownership, common management, and have a common business purpose as indicated by the following:

5

a.  Defendants routinely transferred employees and resources between the Restaurants on an as needed basis. Plaintiff NUNEZ was often transferred to the Furlongs Tavern by Defendants while he was on shift at the Bavarian Manor.

b.  Although Plaintiff NUNEZ would be routinely transferred to the Furlongs Tavern, his wage statements for those weeks would still list Bavarian Manor as his employer – indicating that there was no change in payroll when Plaintiff NUNEZ was transferred.

c.  The Restaurants share common ownership and management through Individual Defendant GARRETT DOYLE, who maintains close operational control of both Restaurants. *See* **Exhibit A** – 12/28/2022 Wave Farm Article. **Exhibit B** – 2/5/2024 Porcupine Soup Article.

d.  The Restaurants share a common human resources and management department through Manager Connie [Last Name Unknown]. Prospective employees are directed to submit their application on the Restaurants' respective websites or reach out to Manager Connie [Last Name Unknown] at (347) 993-5925. *See* **Exhibit C** – Furlongs Tavern Help Wanted, **Exhibit D** – Bavarian Manor Help Wanted.

e.  The Restaurants refer to each other as "sister restaurants" and often advertised for each other through their respective social media accounts. *See* **Exhibit E** – Bavarian Manor 9/9/2023 Facebook Post, **Exhibit F** – Bavarian Manor 6/15/2023 Facebook Post, **Exhibit G** – Furlongs Tavern 8/22/2023 Facebook Post.

22.     The Restaurants are properly named in the Complaint under the theory of a "single integrated enterprise."  Not only did the Restaurants share common ownership, but they also shared interrelation of operations, centralized control of labor relations, and common management as illustrated above. The Restaurants shared multiple common purposes that, although they are separate entities, they can be classified as an "single integrated enterprise", including but not limited to, identical illegal wage and hour policies and interchangeability of employees/resources.

23.     This Court has personal jurisdiction over Defendants in that they are incorporated in the state of New York or operate their headquarters from the State of New York.

24.     Corporate Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the Defendants are thus employers subject to the jurisdiction of the FLSA.

25.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

26.     At all relevant times, the work performed by Plaintiffs and Class members was directly essential to the business operated by Defendants.

27.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTION ACTION ALLEGATIONS

28.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt back-of-house employees, including, but not limited to line cooks, cooks, chefs, porters, hosts, among others, employed by Defendants on

or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

29.     At all and relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated have had substantial job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to straight pay for hours worked beyond 40 hours.

30.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

31.     Plaintiffs bring claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to line cooks, cooks, chefs, porters, hosts, among others,  employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

32.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class Members are readily ascertainable. The member and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member are also determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

33.    The proposed Class is so numerous that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons are unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class.

34.    Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages, (ii) failing to pay proper wages, including overtime, in accordance to 12 N.Y.C.R.R. § 142, (iii) failing to pay wages, including overtime, due to timeshaving, (iv) failing to pay spread of hours premiums, (v) failing to pay manual workers within seven (7) calendar days after the end of their workweek, (vi) failing to provide wage and hour notices, at date of hiring, per requirements of the NYLL, and (vii) failing to provide proper wage statements per requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

35.    Defendants' policies and practices affected all Class Members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class Member.

Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

36.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

37.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class members are to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues to this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.    Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

    b.    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class Members;

    c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class Members for their work;

    d.    At what common method did Defendants utilize to pay Plaintiffs and Class Members for their work;

    e.    Whether Defendants properly notified Plaintiffs and Class Members of their hourly rate and overtime rate;

    f.    Whether Defendants paid Plaintiffs and Class Members proper wages for all hours worked, including overtime hours;

g.  Whether Defendants provided wage and hour notices to Plaintiffs and Class Members, at the date of hiring and annually, per requirements of the NYLL; and

h.  Whether Defendants provided proper wage statements to Plaintiffs and Class Members per requirements of the NYLL.

## **STATEMENT OF FACTS**

Plaintiff ALEJANDRO NUNEZ SANCHEZ

40.    On or around September 2023, Plaintiff SANCHEZ was hired by Defendants to work as a cook at the Bavarian Manor County Inn & Restaurant located at 866 Mountain Ave, Purling, NY 12470. Plaintiff SANCHEZ's employment relationship with Defendants ended on December 31, 2023.

41.    From the start of his employment until the end, Plaintiff SANCHEZ was scheduled to work five (5) days per week for roughly 15 hours each day. Plaintiff SANCHEZ did not have a set schedule as Defendants required Plaintiff SANCHEZ to come into work whenever he was called upon. Whenever Defendants call Plaintiff SANCHEZ for a shift, the shift would be from 7:00 a.m. until 11 a.m. After 11 a.m., Plaintiff SANCHEZ would be given a 2-hour break, after which he would work from 1 p.m. until 12 a.m. In total, Plaintiff SANCHEZ would work fifteen (15) hours for each day that he was called into work. As a result, Plaintiff SANCHEZ routinely worked seventy-five (75) hours every week.

42.    From the start of his employment to his October 2023, Plaintiff SANCHEZ was paid at a flat rate of eight hundred dollars ($800) per week. Beginning from the second week of October 2023, Defendants would pay Plaintiff SANCHEZ in cash without any tax withholdings.

Plaintiff ROSENDO NUNEZ

43.    On or around September 2023, Plaintiff NUNEZ was hired by Defendants to work as a cook at the Bavarian Manor County Inn & Restaurant located at 866 Mountain Ave, Purling, NY 12470. Plaintiff NUNEZ's employment relationship with Defendants ended on January 2024.

44.    From the start of his employment until the end, Plaintiff NUNEZ was scheduled to work five (5) days per week for roughly 15 hours each day. Plaintiff NUNEZ was scheduled to work Wednesday to Sunday from 7 a.m. until 11 a.m. After 11 a.m., Plaintiff NUNEZ would be given a 2-hour break before he goes back to work at 1 p.m., working until midnight. In total, Plaintiff NUNEZ would work fifteen (15) hours for each day for a total of seventy-five (75) hours per week.

45.    From the start of his employment to his termination, Plaintiff NUNEZ was paid at a flat rate of one thousand two hundred dollars ($1,200) per week, regardless of his hours. Defendants withheld taxes for one thousand dollars ($1,000) paid to Plaintiff NUNEZ per pay period. Defendants paid the remaining two hundred ($200) in cash.

**Wage and Hour Claims**

46.    Despite being scheduled to work five days week, Plaintiffs worked more than just five days. Defendants required Plaintiffs to come in to work on their days off to paint and clean the Bavarian Manor every week. As a direct result, Plaintiffs essentially worked seven days a week. Defendants never paid Plaintiffs for their off days spend painting or doing miscellaneous tasks at the Bavarian Manor. As a result, Defendants improperly timeshaved two days from Plaintiffs.

13

47.    Towards the end of both Plaintiffs' employment relationship with Defendants, Defendants ceased all wages payments that Plaintiffs earned. Specifically, Plaintiffs were never paid wages for November 2023 and December 2023.

48.    There was never any agreement between Plaintiffs and Defendants that their fixed rate would cover Plaintiffs' overtime work. Nor could there have been such an agreement, as $800 and $1,200 for 75 hours of weekly work fall well below statutory wage requirements under NYLL.

49.    At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were never compensated overtime pursuant to the FLSA and NYLL.

50.    At all relevant times, Plaintiffs and Class members were improperly compensated for their work pursuant to NYLL, including NYLL's Minimum Wage Order for Miscellaneous Industries and Occupations. 12 N.Y.C.R.R. § 142.

51.    At all relevant times, Plaintiffs and Class members were never compensated for all spread of hour premiums for workdays lasting more than ten hours.

52.    At all relevant times, Defendants failed to properly compensate Plaintiffs in a timely manner as required by the NYLL. Under New York Labor Law, all manual worker(s) must be paid on a weekly basis. Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor. At all relevant times, Plaintiffs were employed as cooks by Defendants, their main duties involved primarily manual labor. Defendants compensated Plaintiffs with their wages well beyond 7 calendar days after the last day worked in their workweek. Even when Defendants attempted to pay Plaintiffs on time, the checks issued by Defendants would often bounce and the new check would not be issued until weeks later. In doing so, Defendants violated Labor Law § 191(1)(a), which requires "manual workers" to be compensated "not later than seven

calendar days after the end of the week in which wages are earned." Even more egregious, Defendants still have not paid Plaintiffs for the work Plaintiffs completed in November and December of 2023 to date. Similarly, Class Members suffered from Defendants' failure to compensate them in a timely manner.

53.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiffs, FLSA Collective Plaintiffs, and Class members for all earned wages pursuant to NYLL or the FLSA.

54.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, FLSA Collective Plaintiffs, and Class members the proper overtime rate for all hours worked in excess of forty (40) in each workweek.

55.     Defendants knew that Plaintiffs worked for seven (7) days a week, as Defendants were the ones to require such work. Defendants knew that despite requiring such work they were not compensating Plaintiffs at all for this work. Further, Defendants knew that Plaintiffs were scheduled to work over forty (40) hours per week, as Defendants were the ones to create such schedules. Defendants therefore knew that any failure to pay wages would also include the failure to pay overtime wages.

56.     Defendants' policy of paying at a fixed rate and in cash for parts of Plaintiffs' employment resulted in Plaintiffs' not receiving accurate IRS Form W-2 for their duration of their employment.

57.     Plaintiff SANCHEZ was paid at a fixed rate of $800 per week, after taxes, Plaintiff SANCHEZ would receive around $600. Towards the end of his employment, Defendants stopped issuing paystubs to Plaintiff SANCHEZ and paid him $600 in cash. When Plaintiff SANCHEZ

received his Form W-2 for the work year, he noticed that no taxes or income was reported for the pay periods where he was paid in cash.

58.     Plaintiff NUNEZ was paid at a fixed rate of $1,200 per week. Defendants split Plaintiff NUNEZ's wages into a check for $1,000 and $200 in cash. Defendants withheld and paid taxes for the check amount but did not for the cash amount. Plaintiff NUNEZ noticed on his Form W-2 that Defendants only reported the check amounts that Plaintiff NUNEZ was paid in and the cash amount was omitted.

59.     As a result, Defendants willfully failed to properly record, account for, and report to the IRS all monies paid to Plaintiffs and Class members. In failing to account for those monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for statutory damages for each Class member for each fraudulent filing, which would have to be at least once per year.

60.     In violating the Internal Revenue Code by failing to provide proper Form W-2s, Defendants also breached their contract with Plaintiffs and Class member to pay for the employer's share of Social Security and Medicare taxes for each employee, which left Plaintiffs and Class members liable for this sum and reduced Plaintiffs' eligibility for social security benefits.

61.     In the alternative, Defendants unjustly enriched themselves at the expense of Plaintiffs and Class members by retaining monies that should have been remitted to the IRS on Plaintiffs' and Class members' behalf.

62.     As a result, Plaintiffs and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

63.    The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiffs and each Class member 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

64.    Even if Defendants could show that they paid some employees a part of their wages in check and filed appropriate Form W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes for all their wages earn, including those paid in cash.

65.    Defendants never provided Plaintiffs and Class members with wages notices at hiring, as required by New York Lab. Law § 195(1).

66.    Plaintiffs and Class members likewise did not receive proper wage statements from Defendants, as required under NYLL. The cash payments that were disbursed to Plaintiffs and Class members were not accompanied by any information that is statutorily required. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by New York Lab. Law § 195(3).

67.    Therefore, Defendants directly violated the Work Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendants knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiffs and Class members.

68.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These

provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

69.     Had Defendants provided Plaintiffs and Class members with wage statements containing a detailed breakdown of Plaintiffs' regular and overtime hours and listing Plaintiffs' regular and overtime rates, as required under NYLL § 195(3), it would have been self-evident that Plaintiffs were being underpaid, since a proper wage statement would have shown that Plaintiffs were entitled to no less than $1,387.50 per week for 40 hours of regular work and 35 hours of overtime work in 2023 or $1,480 per week for 40 hours of regular work and 35 hours of overtime work in 2024. This calculation is based on the five days of work that Defendants paid Plaintiffs for and does not include damages for two days of work where Plaintiffs remain uncompensated.

70.     Faced with this undeniable proof of their unlawful wage practices, Defendants would have had to either (a) increase Plaintiffs' wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiffs were underpaid, which would readily inculpate Defendants in court. Either possibility would have allowed Plaintiffs to more effectively vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

71.     The failure to provide proper wage notices and wage statements continues to result

in delayed payment of all proper wages owed to Plaintiffs and Class members. This delayed payment caused Plaintiffs and Class members to struggle to pay bills and other debts.

72.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

73.     Because Defendants did not produce proper wage statements containing the actual wages to which Plaintiffs were entitled (and the proper deductions), Defendants could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiffs' proper earnings for the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

74.     The effect of not reporting or underreporting wages on an employee's W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

75.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y*., LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4, 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

76.     Here, it is clear that Defendants' failure to provide Plaintiffs and Class members with proper wage statements entailed "concrete, downstream consequences" involving monetary injury, because the direct effect was to reduce Plaintiffs and Class members' entitlement to social security.

77.     Courts agree that the misreporting of earnings constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes

because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

78.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees, rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiffs and Class members lost benefits by virtue of how Defendants reported, or failed to report, their income, which was in turn caused by the absence of legally compliant wage statements. That is why "Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

79.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

80.    Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to his social security benefits as soon as Defendants sent either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiffs' true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendants' failure to issue legally compliant wage statements.

81.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

### (On behalf of themselves and FLSA Collective Plaintiffs)

82.     Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

83.     At all relevant times, Defendants were and continue to be employers engaged in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

84.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

85.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

86.     In November and December of 2023, Defendants failed to pay wages to Plaintiffs and FLSA Collective Plaintiffs for all hours worked in violations of the FLSA.

87.     At all relevant times, Defendants had a policy and practice that failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

88.     At all relevant times, Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount for all hours worked due to a fixed salary policy.

89.     At all relevant times, Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount due to a policy of time-shaving.

90.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

91.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

92.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

93.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

94.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, plus an equal amount as liquidated damages.

95.     Plaintiffs and FLSA Collective Plaintiffs is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

### (On behalf of themselves and the Class)

96.     Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

97.     At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

98.     Defendants knowingly and willfully failed to pay Plaintiffs and Class members proper regular and overtime wages, in violation of the NYLL.

99.     Defendants knowingly and willfully failed to pay Plaintiffs and Class members proper regular and overtime wages due to a fixed salary policy, in violation of the NYLL.

100.    Defendants knowingly and willfully failed to pay Plaintiffs and Class members proper regular and overtime wages due to a policy and practice of timeshaving in violation of the NYLL.

101.    Defendants knowingly and willfully failed to pay Plaintiffs and Class members their spread of hours premiums for shifts worked in excess of ten (10) hours, in violation of the NYLL.

102.    Defendants knowing and willfully failed to pay Plaintiffs and Class members within (7) calendar days after the end of the week in which wages are earned, in violation of NYLL.

103.    Defendants knowingly and willfully failed to provide Plaintiffs and Class members with proper wage and hour notices as required under the NYLL. Due to Defendants' NYLL

violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime wages, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

**COUNT III**

**<u>CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS</u>**

**<u>UNDER 26 U.S.C. § 7434(a)</u>**

**<u>(On behalf of themselves and the Class)</u>**

104.    Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

105.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

106.    In failing to provide Plaintiffs and Class members with accurate IRS Form W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs and the Class as wages. Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434(a).

107.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. The defendants' actions were willful violations, or showed reckless disregard for, the provisions of the Internal Revenue Code.

108.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiffs for reasonable attorneys' fees.

## COUNT IV

## BREACH OF CONTRACT

## (On behalf of themselves and the Class)

109.    Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

110.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance . . . This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . [T]he duties of good fair and fair dealing . . . encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232n d Owners Corp v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

111.    When Plaintiffs, FLSA Collective Plaintiffs and Class members accepted offers of employment from Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiffs, FLSA Collective Plaintiffs, and Class members in accordance with all applicable laws. This involved, inter alia, a duty to abide by the Internal Revenue Code and pay all required FICA taxes and report to the IRS that these had been paid.

112.    Defendants breached this duty when they decided to: (1) pay Plaintiffs, FLSA Collective Plaintiffs and Class members in cash without withholdings or deductions; and (2) not file proper W-2 forms. As a result, Plaintiffs and Class members lost part of the benefit of the

bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf, but did not.

## COUNT V

## UNJUST ENRICHMENT

## (On behalf of themselves and the Class)

113.    Plaintiffs reallege and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

114.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

115.    Defendants were unjustly enriched at Plaintiffs' expense when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiffs and Class members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system. Plaintiffs pleads their unjust enrichment claim as an alternative to their breach of contract claims.

116.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid regular and minimum wages, due under the FLSA and the NYLL;

d. An award of statutory damages to Plaintiffs and each Class member under 26 U.S.C. § 7434.

e. Disgorgement from Defendants of all illegal retained sums that should have gone into FICA contributions;

f. An award of unpaid compensation due to Defendants' illegal timeshaving polices under the FLSA and the NYLL;

g. An award of unpaid spread of hours premiums, due under the NYLL;

h. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

i. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA and NYLL;

j. An award of back pay, front pay, compensatory damages, punitive damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the FLSA and the NYLL;

k. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l. Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

m. Designation of the action as a class action pursuant to F.R.C.P 23;

n. Designation of Plaintiffs as Representative of the Class;

o. Designation of Plaintiffs' Counsel as Class Counsel; and

p. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: May 21, 2024                    Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: ___*/s/ C.K. Lee*_____
C.K. Lee, Esq. (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1180
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA*
*Collective Plaintiffs, and the Class*

29